# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

CLERK USDC EDWI
FILED
2022 NOV -7 P 2: 06

LAZARICK SPADE,

      Plaintiff,

**22-C-1324**

  -vs-

Case No.:# _____

BOLDUAN, KELLER, CROMWELL,
MEISNER, McHUGH, CONGDON, MASTRICOLA,
BEIER, Lt. ROSS, Lt. RODENSAL, Dr. KYDONIEUS,
      Defendants.

---

## CIVIL COMPLAINT UNDER 42 U.S.C. § 1983
### (JURY TRIAL DEMANDED)
#### PLAINTIFF CERTIFY AND VERIFY INFORMATION HEREIN IS TRUE AND CORRECT UNDER PENALTY OF PERJURY

---

### SUMMARY OF CASE

    The Plaintiff, LAZARICK SPADE, brings this § 1983 civil rights action before this honorable Court on the basis that he contends that several State employees violated his protected Eighth Amendment Constitutional rights by failing to protect him. Also, the Plaintiff asserts, that as a direct result of a staff member repeatedly labelling him a "snitch" to different groups of inmates, one group being associated with the [White Supremacy]; subjected him to and exposed him to great bodily harm. The risk of substantial harm the defendants exposed the Plaintiff to came to a manifestation one night in particular when he was accosted in the bathroom by this group of White Supremacy members and beaten up. For these reasons, the Plaintiff respectfully requests that he be allowed to pursue the named defendants mentioned above.

### JURISDICTION

    1.)  This court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and 1343(a) (3).

    2.)  Venue is the U.S. District Court for the Eastern District of Wisconsin is proper pursuant to U.S.C. § 1391 (b).

    3.)  Plaintiff certify and verify this Complaint.

### PARTIES

    4.)  Plaintiff <u>Lazarick Spade</u> is and was at all times mentioned in this Complaint a prisoner of the State of Wisconsin in the custody of

-1-

the Wisconsin Department of Corrections ("DOC"). He is currently confined at the Redgranite Correctional Institution, located at: 1006 County Road EE, (P.O. BOX 925), Redgranite, WI 54970.

    5.) Defendant **Bolduan** (first name unknown), is a Correctional Officer ("C.O."), at the Redgranite Correctional Institution, ("RGCI").

    6.) Defendant **Keller** (first name unknown), is a Captain at RGCI.

    7.) Defendant **Dan Cromwell**, is the Warden at RGCI.

    8.) Defendant **Michael Meisner**, was the Warden at RGCI.

    9.) Defendant **McHugh** (first name unknown), was the Security Director at RGCI.

    10.) Defendant **Congdon** (first name unknown), is the Security Director at RGCI.

    11.) Defendant **Mastricola** (first name unknown), is a Captain at RGCI.

    12.) Defendant **Nate Beier**, is the Institution Complaint Examiner (ICE) at RGCI.

    13.) Defendant **Ross** (first name unknown), is a Lieutenant at RGCI.

    14.) Defendant **Rodensal** (first name unknown), is a Lieutenant at RGCI.

    15.) Defendant **Kydonieus** (first name unknown), is a Licensed Psychologist.

    16.) All defendants have acted and continue to act under color of State law at all times relevant to this Complaint.

## STATEMENT OF FACTS

    17.) On the night of August 18, 2022 between the time of 10:00 p.m. and 11:20 p.m., C.O. Bolduan spread the false narrative to several groups of inmates that the Plaintiff was a snitch. On this particular night, C.O. Bolduan was working 3rd shift on housing unit (H-east). The Plaintiff was returning to his cell but decided to use the telephone however, an inmate had asked him a question so the Plaintiff stopped to have a short conver-

-2-

sation with this individual. It was at this time when the Plaintiff heard C.O. Bolduan say to him in a loud voice, "If you wanna stand in my day-room, you can go lock in."

18.) The Plaintiff then took a seat at the puzzle table to await his turn to use the next available telephone. During his observation of the dayroom, he came to notice that there was an inmate who happened to be Caucasian, standing in the doorway of cell (#220). The Plaintiff watched this inmate "cell visit" for over 20-minutes without a word from C.O. Bolduan instructing him to move along - this is what prompted the Plaintiff to approach the officer's desk to address the entire matter.

19.) The Plaintiff arrived at the officer's desk and politely stated, "Excuse me young lady may I please ask you a question?" C.O. Bolduan stated, "Yes." The Plaintiff went on to say verbatim: "You told me if I wanted to stand in your dayroom I can lock in my room...But I've been watching you watch this young white guy "cell visiting" at room number (#220) for about thirty minutes and you haven't said anything to him. Why is that?"

20.) C.O. Bolduan stated that she said something to the Plaintiff because he was being loud. The Plaintiff replied, "How could you hear me talking when I was drinking from a cup? And secondly, if I was being loud, why wouldn't you just ask me to lower my tone?" C.O. Bolduan's response to this was, "What I say to him is none of your business - and he asked permission to doorway visit." The Plaintiff flat out said that she was ly-ing and just made that up because he had called her out on targeting him.

21.) C.O. Bolduan did a security round and stopped at the back study tables were the [White Supremacists] sat and congregated. The Plaintiff was able to identify these particular white men as members of the Supre-macy based upon their reputations; statements they have been known to ma-ke, as well as their tattoos. The Plaintiff overheard C.O. Bolduan say to

-3-

these individuals, "Be careful of what you guys do because it's an inmate that likes to tell on people." The Plaintiff confronted Bolduan and asked was she referring to him with that statement she had just made. C.O. Bolduan ignored him and kept walking.

22.) Later on this same night near the close of dayroom hours which is 11:30 p.m., C.O. Bolduan was at the officer's desk having an in-depth conversation with inmate [Michael Moss #607989]. She was explaining how vengeful and or vindictive she is and can become to and toward inmates she doesn't like. She went as far to explain an incident she was involved in as an example while she was the SGT. on E-unit prior to her being demoted for misconduct.

23.) On August 19, 2022 inmate [Michael Lee #505955], approached the Plaintiff while he was outside in the courtyard and stated verbatim: "I overheard C.O. Bolduan telling other inmates that you are a snitch and we need to do something about it." The Plaintiff was informed that C.O. Bolduan directly stated to inmate [John Pitt #700725], that he snitched on him.

24.) The Plaintiff then went and spoke to inmate Pitt and asked if this information was true...Did C.O. Bolduan tell him that the Plaintiff had snitched on him. When confronted, inmate Pitt confirmed that on the night of August 18, 2022 C.O. Bolduan told him that someone was trying to get him into trouble for doorway visiting...That there was a snitch on the unit. Pitt said C.O. Bolduan gave a description of [Mr. Spade] as being a very tall black man, slim, with a small afro. Pitt told the Plaintiff that he knew exactly who C.O. Bolduan was referring to following her detailed description.

25.) After speaking with inmate Pitt, the Plaintiff immediately came back inside of the unit in a frantic, hostile, furious state of mind. It was at this precise time when the Plaintiff saw Dr. Kydonieus and asked

-4-

her for help in calming his nerves. She spoke to him briefly which did assist in calming him down. However; Dr. Kydonieus said that she would follow-up with him at a later date but she did not.

26.) Moments later on this same date, the Plaintiff saw and spoke with Lt. Rodensal. He explained the entire situation to him involving C.O. Bolduan. The Plaintiff clearly expressed, because of the rumors Bolduan had been going around spreading about him being a snitch; he was in fear for his safety. Lt. Rodensal's response was that, conduct of this nature was completely unacceptable and that he was apologetic for Bolduan's un-professional behavior. Lt. Rodensal advised the Plaintiff to file an in-stitutional complaint and that he'd speak to an higher authority.

27.) At approximately 5:00-5:30 p.m., on this same date the Plaint-iff spoke to SGT. Sheroeder about C.O. Bolduan's misconduct. SGT. Sheroe-der also apologized for the actions of C.O. Bolduan and stated that he was embarrassed by the situation. He stated that he would also speak to a higher authority.

28.) On August 20, 2022 at approximately 5:00-5:30 p.m., the Plai-tiff spoke with Captain Mastricola concerning C.O. Bolduan's misconduct. The Plaintiff informed Captain Mastricola that he was in fear for his safety due to C.O. Bolduan going around telling other inmates that he was a snitch. The Plaintiff went on to say that he especially felt vulnerable and at risk of serious harm because C.O. Bolduan had told a group of ra-cist white men that he had snitched on another white man, [inmate Pitt.] He stated he shouldn't have to walk around daily in fear for his safety based upon a C.O.'s misconduct. Captain Mastricola revealed that C.O. Bo-lduan was currently already under investigation for a similar matter which was unacceptable. Captain Mastricola ensued that she would handle the sit-uation and begin the investigation process.

-5-

29.) On August 21, 2022 at approximately 10:15-10:45 p.m., the Plaintiff had an opportunity to speak with Lt. Ross. After hearing the entire story concerning C.O. Bolduan's misconduct, Lt. Ross stated that he apologize on behalf of the staff at RGCI and promised that the matter would be investigated and resolved.

30.) On August 21, 2022 the Plaintiff filed an official complaint within the "ICRS" Inmate Complaint Review System, (RGCI-2022-12652).

31.) On August 22, 2022 at approximately 8:00-8:30 a.m., the Plaintiff was able to briefly speak with Captain Keller, who is also the (H-unit) unit manager. The Plaintiff explained the entire situation to Keller concerning C.O. Bolduan's misconduct and how he feared being attacked by the Supremacy members based upon the dirty looks they had been giving him and the threats they had been making. Captain Keller's verbatim response was: "I'm sorry that happened to you. I'll look at your Interview/Request Form and get back to you." [It should be noted, Captain Keller did not 'get back to the Plaintiff'.]

32.) The Plaintiff suffers from a serious health condition which periodically requires him to be hospitalized. On September 4, 2022 the Plaintiff was taken to the hospital where he remained until he was returned to RGCI on September 7, 2022. A few hours after the Plaintiff's return, he was approached by a devout Muslim who would like to remain anonymous until a later date due to his fear of being retaliated against. The devout Muslim informed the Plaintiff that on the night of September 4, 2022 C.O. Bolduan worked 3rd shift on (H-east). The devout Muslim stated C.O. Bolduan made a security round stopping at the back study tables where the Supremacy members congregate and made the statement to them: "They took the [snitch] to the hospital. [It should be noted that the devout Muslim agreed to prepare an Affidavit swearing to this information.]

-6-

33.) The Plaintiff reported this incident to Captain Mastricola as well as Captain Keller on September 8, 2022. The Plaintiff told Captain Keller everything the devout Muslim had told him concerning what C.O. Bolduan had said to the Supremacy members on the night of September 4, 2022. Captain Keller appeared to be upset saying, "Come on! Do you expect me to believe this? Your worrying about nothing!" The Plaintiff felt so slighted by what Captain Keller had said that he decided to stop reporting all of the stuff that had been occurring since the administration wasn't doing anything about it.

34.) During the early hours of September 11, 2022 at approximately 1:30-2:00 a.m., the Plaintiff was awakened out of his sleep by the urge to urinate. The Plaintiff entered the bathroom and groggily stood at the urinal relieving his bladder. Suddenly the Plaintiff was being punched repeatedly about the head and face. The Plaintiff fell to the floor attempting to shield his face and head from the vicious blows and kicks. During the entire assault his attackers called him a "snitch" and a stupid "nigger". The first glimpse the Plaintiff got of his attackers is when the three of them exited the bathroom. The Plaintiff was clearly able to identify all three of the white men as individuals who congregates at the back study tables affiliated with the [White Supremacy.] After the beating, the Plaintiff cleaned himself up the best he could, returned to his cell where he took some o-t-c pain medication, and tried to go back to sleep.

35.) The Plaintiff secured sworn Declarations from the following inmate witnesses who are prepared to testify in regards to information that they have concerning this matter: Michael Moss #607989; John Pitt #700725, Michael Lee #505955; and Tyler Higgins #583438.

36.) Due to the various staff misconduct addressed herein; Plaintiff Spade has suffered not only physical pain and injuries but psychol-

-7-

ogical injuries as well and he continues to suffer.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

.37.) Plaintiff Spade has properly exhausted all of his administrative remedies available to him.

## ARGUMENT

.38.) In Benefield, a prisoner plaintiff brought a claim under the Eighth Amendment arguing a guard put the plaintiff in physical danger at the hands of other inmates when he labeled the plaintiff a "snitch."

While "simple verbal harassment does not constitute cruel and unusual punishment," DeWalt v. Carter, the Plaintiff in the instant case [Spade], makes allegations which go beyond mere taunts. Harassment may become cruel and unusual punishment when it involves a "threat to kill, or to inflict any other physical injury." Dobbey v. Illinois Dept. of Corrections, 574 F.3d 443, 446 (7th Cir. 2009). Plaintiff Spade does not allege that C.O. Bolduan treatened him directly, but his allegations support the drawing of an inference that C.O. Bolduan has acted maliciously by encouraging other prisoners to harm him. That is sufficient to state a claim. Cf. McGill v. Duckworth, 944 F.2 344, 347 (7th Cir. 1991). These labels, combined with Spade's allegations that C.O. Bolduan was encouraging other prisoners to take action against him, are enough to allow a reasonable jury to infer that defendant Bolduan has placed Spade at a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 828 (1994).

Once prison officials know about a serious risk of harm, they have an obligation "to take reasonable measures to abate it." Borello v. Allison, 446 F.3d 742, 747 (7th Cir. Cir. 2006).

39.) **CLAIM 1:** (Bolduan). The Plaintiff would like to proceed against this particular defendant on the theory that she violated his Eighth Amendment rights by making inflammatory statements involving the Plaintiff being a snitch in the presence of others on the nights of August 18, and September 4, 2022. The Plaintiff contends that these statements placed him in a class of vulnerable inmates that are frequently subject to assault. These actions ultimately did in fact result in the Plaintiff being attacked during the early hours of September 11, 2022.

40.) **CLAIM 2:** ( Keller, Cromwell, Congdon, Mastricola, Beier, Lt. Ross, Lt. Rodensal). All of these defendants were aware of the substantial risk of harm the Plaintiff faced and yet failed to take the appropriate action necessary to ensure the Plaintiff's safety. The Plaintiff would like to pursue these defendants for Eighth Amendment failure to protect.

41.) **CLAIM 3:** (Cromwell, Meisner, Mchugh, Congdon). The Plaintiff would like to proceed against these four particular defendants on the the-

-8-

ory that at one point of time or another, each of these defendants failed to train C.O. Bolduan which resulted in her violating the Constitutional rights of multiple inmates. Within the last four years, C.O. Bolduan has been disciplined several times for her blatant disrespect toward inmates and complete disregard for institution policies and procedures. C.O. Bolduan was even demoted from Sgt. back down to an officer and removed from her post for misconduct. Approximately four years ago, Meisner was the Warden here at RGCI, and McHugh was the Security Director. Following their tenor, Cromwell took over as Warden here at RGCI, and Congdon as Security Director. During each of these defendants' employment, there was a pattern of misconduct on C.O. Bolduan's part and each of these defendants failed to take effective corrective action pertaining to Bolduan; turning a blind eye. See: <u>Gentry v. Duckworth</u>, 65 F.2d 555, 561 (7th Cir. 1995); <u>Jones v. City of Chi.</u>, 856 F.2d 985, 992 (7th Cir. 1988).

42.) <u>CLAIM 4:</u> (Kydonieus). During the entire course of this situation, the Plaintiff has been going through mental pain and anguish. On August 19, 2022 the Plaintiff spoke with Dr. Kydonieus (PSU), and she said that she would follow-up with him but she did not. The Plaintiff would like to pursue this defendant under the deliberate indifference standard for her failure to treat his mental health needs during this difficult time.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Lazarick Spade, request that the Court grant the following:

A. A declaratory judgment stating that the defendants violated Plaintiff's rights under U.S. Constitution.

B. To order appointment of counsel.

C. Award compensatory damages in the amount of $1-Million dollars to be paid individually and collectively.

D. Award punitive damages in the amount of $500,000.00 dollars to be paid individually and collectively. (A total award of one million and a half dollars.)

E. Award court cost and all other fees.

F. Waive any up-front filing fees allowing Plaintiff to proceed (in forma pauperis) persuant to <u>28 U.S.C. § 1915.</u>

-9-

G. Grant any and all other relief this Court determines appropriate.

Dated this 7th day of _October_ ,2022.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts stated herein are true and correct and based on personal observations and direct knowledge.

RESPECTFULLY SUBMITTED,

Mr. LAZARICK SPADE (#279813)
RGCI
P.O. BOX 925
Redgranite, WI 54970

-10-