UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LAZARICK SPADE,

        Plaintiff,

      v.                                  Case No. 22-C-1324

CO BOLDUAN,
CPT KELLER,
DAN CROMWELL,
MICHAEL MEISNER,
SECURITY DIRECTOR MCHUGH,
SECURITY DIRECTOR CONGDON,
CAPTAIN MASTRICOLA,
NATE BEIER,
LT. ROSS,
LT. RODENSAL, and
DR. KYDONIEUS,

        Defendants.

## SCREENING ORDER

Plaintiff Lazarick Spade, who is currently serving a state prison sentence at Redgranite Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Spade's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Spade has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Spade has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his

complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $59.40. Spade's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to Spade, on August 18, 2022, he entered the dayroom to use the telephone. None were available, so he began to talk to another inmate, at which time Defendant CO Bolduan told him to sit down or go back to his cell. Spade explains that he sat down and noticed that another inmate was standing having a conversation. Spade asserts that he confronted Bolduan and asked her why she yelled at him for standing but allowed that other inmate to stand. The two had a brief conversation, during which Spade accused Bolduan of lying. Dkt. No. 1 at 3.

Spade explains that he sat back down, and Bolduan did a security round, during which she stopped at the back table where White Supremacists congregate. Spade asserts that he heard Bolduan say, "Be careful of what you guys do because it's an inmate that likes to tell on people." Spade states that he confronted Bolduan, but she ignored him. According to Spade, later that night, Bolduan had a conversation with another inmate in which she explained how vengeful and vindictive she can be towards inmates she does not like. She explained that she had been demoted over this behavior. *Id.* at 4.

The next day, on August 19, 2022, an inmate told Spade that Bolduan was telling inmates, including the inmate who had been standing the night before, that he was a snitch and that they needed to do something about it. Spade asserts that he spoke to the inmate from the night before, and he confirmed that Bolduan had informed him that Spade had tried to get him in trouble. Spade asserts that he was very upset. He passed Defendant Dr. Kydonieus and asked her to help him

3

calm his nerves. Spade explains that she helped him calm down and told him she would follow up, but she never did. *Id.* at 4-5.

Spade asserts that he then spoke to Defendant Lt. Rodensal and told him that he was afraid for his safety because of the rumors Bolduan was spreading. According to Spade, over the next couple of days, he also informed Sgt. Sheroeder, who is not a defendant, and Defendants Cpt. Mastricola, Lt. Ross, Cpt. Keller, and institution complaint examiner Beier of what Bolduan was saying to other inmates. Spade asserts that they all apologized for her behavior and said they would look into it. Spade asserts that he learned Bolduan was already under investigation for other alleged misconduct. *Id.* at 5-6.

According to Spade, he was taken to the hospital on September 4, 2022, for an unrelated health issue and returned to the institution on September 7, 2022. Spade asserts that, upon his return, an inmate told him that Bolduan had told the White Supremacists that they had taken Spade to the hospital. Spade asserts that he told Defendant Cpt. Keller, but he responded, "Come on! Do you expect me to believe this? You['re] worrying about nothing!" Spade states that he felt "so slighted" that he stopped reporting everything that was going on. *Id.* at 7.

On September 11, 2022, in the middle of the night, Spade woke up to use the restroom. He states that, while in the bathroom, he was repeatedly punched, while his attackers yelled "snitch" and other derogatory names. Spade asserts that he saw his attackers as they exited the bathroom and was able to identify them as the men who Bolduan had been talking to in the dayroom. Spade asserts that, after the attack, he cleaned himself up and tried to go back to sleep. *Id.*

### THE COURT'S ANALYSIS

Prison officials must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). An officer who shows deliberate indifference to

4

an inmate's safety by provoking other inmates to harm him violates the Eighth Amendment. *See Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014) (citing *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008); *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001). Accordingly, Spade states a deliberate indifference claim against Bolduan based on allegations that she spread rumors that he was a snitch and encouraged others to do something about it.

Spade does not, however, state claims against the remaining defendants. As the Seventh Circuit has explained, "a prison official does not violate the Eighth Amendment every time an inmate gets attacked by another inmate." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). More specifically, "[j]ust because a correctional officer knows an inmate has been branded a snitch— and it's common knowledge that snitches face unique risks in prison—does not mean that an officer violates the Constitution if the inmate gets attacked." *Id.* at 570. To be liable, an official must know of and disregard "an excessive risk" to an inmate's safety, meaning that he knows of specific threats from which he can infer the inmate faces impending harm. *See Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). "Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger." *Id.* (citations omitted).

Spade fails to state a claim against Rodensal, Mastricola, Ross, Beier, and Keller based on allegations that he told them about the comments Bolduan had made and stated he was afraid. Spade alleges that some of the inmates were giving him dirty looks and saying threatening comments, but he does not explain what the inmates were saying or whether he told the officers about what they had said. Nor does Spade allege that he asked the officers to do anything other than address Bolduan's alleged misconduct. Finally, the attack happened nearly a month after he

5

first raised his vague concerns about his safety. Given that Spade failed to identify a "specific, credible, and imminent risk of serious harm," *id.* at 480, he fails to state a claim.

Spade also fails to state a claim against Dr. Kydonieus based on allegations that she did not follow up with him after passing him in the hall. Spade concedes that she stopped to talk to him and that he felt better after talking to her, so he was not in distress when the two parted. Spade does not allege that he sought further treatment. Accordingly, even if Spade had adequately alleged that he was suffering from an objectively serious mental health condition, the Court cannot reasonably infer that Dr. Kydonieus knew about it. *See Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir. 1998) (explaining that to be liable a defendant "must be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference"). Her failure to follow up without out more amounts to, at most, negligence, which is insufficient to state a constitutional claim. *Farmer*, 511 U.S. at 835.

Finally, Spade fails to state a claim against Cromwell, Meisner, McHugh, and Congdon based on his assertions that "at one point of time or another, each of these defendants failed to train C.O. Bolduan which resulted in her violating the Constitutional rights of multiple inmates." Dkt. No. 1 at 9. The only time a supervisor will be held liable for a subordinate's misconduct is if the supervisor directs or consents to the misconduct. For example, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye" for fear of what they might see. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Jones*, 856 F.2d at 992. Spade alleges that "at one point of time or another" Bolduan's supervisors failed to address her acts of misconduct, but he undercuts his own conclusion by explaining that she was under investigation for misconduct

at the relevant time and had been demoted in the past. He also fails to allege that Cromwell, Meisner, McHugh, or Congdon knew or turned a blind eye to her conduct in relation to Spade. Their failure to detect her alleged mistreatment of Spade while in the midst of investigating her alleged mistreatment of others is merely negligence, not a demonstration of deliberate indifference.

**IT IS THEREFORE ORDERED** that Spade's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Keller, Cromwell, Michael Meisner, McHugh, Congdon, Mastricola, Beier, Ross, Rodensal, and Dr. Kydonieus are **DISMISSED** because Spade fails to state a claim against them.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Spade's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on CO Bolduan.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, CO Bolduan shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of Spade shall collect from his institution trust account the $290.60 balance of the filing fee by collecting monthly payments from Spade's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Spade is

transferred to another institution, the transferring institution shall forward a copy of this Order along with Spade's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Spade is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Spade is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Spade may find useful in prosecuting this case.

Dated at Green Bay, Wisconsin this 25th day of January, 2023.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge